## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DANIEL E. DOYLE, JR, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) C.A. No. 1:21-CV-00479-MSM-LDA |
| PATRICIA A. COYNE-FAGUE, in her | ) |
| official capacity as Director of the | ) |
| DEPARTMENT OF CORRECTIONS | ) |
| FOR THE STATE OF RHODE | ) |
| ISLAND | ) |
| | ) |
| Respondent. | ) |

### MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The petitioner, Daniel E. Doyle, Jr., an inmate at the Rhode Island Adult Correctional Institute, has filed with this Court a Petition pursuant to 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody.  The respondent, Patricia A. Coyne-Fague, in her capacity as Director of the Rhode Island Department of Corrections, has moved to dismiss the petition.

For the following reasons, the respondent's Motion to Dismiss (ECF No. 5) is GRANTED, and Mr. Doyle's petition for a writ of habeas corpus (ECF No. 1) is DENIED and DISMISSED.

## I.    BACKGROUND

The relevant facts of this case are adapted from *State v. Doyle*, 235 A.3d 482 (R.I. 2020), unless otherwise noted.

The petitioner was the executive director of the Institute for International Sport ("the Institute"), a Rhode Island nonprofit corporation formed in 1987 with the goal of "expanding the opportunities for young people around the world to participate in sports activities in order to improve and develop their capabilities[.]"  *Doyle*, 235 A.3d at 489.  The Institute operated primarily through grants obtained by the State of Rhode Island and private donations.  (ECF No. 1-1 at 2.)

Sometime in the early 2000s, the petitioner decided that the Institute required a second building, to be called the "Leadership Building," to supplement the existing "Hall of Fame Building."  *Doyle*, 235 A.3d at 490.  In addition to securing funds from private donors, the petitioner, in 2007, secured funds from the State of Rhode Island. *Id.*  The total of $575,000 of these state funds came in the form of two grants from the Rhode Island General Assembly's Joint Committee on Legislative Services ("JCLS"). *Id.*

In 2009, Marisa White, the director of JCLS, noticed that the Leadership Building remained under construction, long after she believed it should have been completed.  *Id.*  Her concerns led to a JCLS investigation, which was referred to the office of the state Auditor General.  *Id.*  After the Auditor General issued a report on his findings in 2012, a grand jury investigation resulted in an eighteen-count indictment, charging the petitioner with seven counts of embezzlement in violation of R.I.G.L. § 11-41-3, one count of obtaining money under false pretenses under §§ 11-41-4 and 11-41-5, five counts of forgery in violation of R.I.G.L. § 11-17-1, and five

counts of giving false documents to an agent, employee, or public official in violation of R.I.G.L. § 11-18-1. *Id.*

On December 5, 2016, at the conclusion of a three-month trial, a jury returned guilty verdicts on all eighteen counts. (ECF No. 1-1 at 1-2.)

Among his pretrial pleadings, the petitioner filed a motion *in limine* that the Rhode Island Supreme Court described as a "broad-based attack against a significant amount of the state's evidence and a host of prosecution witnesses." *Dolye*, 235 A.3d at 492. Specifically, the petitioner argued that this evidence, which ultimately spanned two weeks of the trial, was inadmissible under Rules 403 and 404(b) of the Rhode Island Rules of Evidence because it related solely to his bad character. *Id.* The trial justice issued a preliminary ruling denying the motion, finding that "facially, the state's planned evidence appeared relevant, and not in contravention of Rule 404(b)." *Id.* at 492-93. The trial justice further stated that she would decide during trial whether the evidence should be admitted in accordance with Rule 404(b). *Id.* at 493. Much of this evidence concerned the JCLS grant and the audit that followed.

On Appeal, the Rhode Island Supreme Court determined that the petitioner had not preserved specific objections to the prior bad acts evidence and therefore held that the issue was not properly before the court pursuant to its well-settled "raise or waive" rule. *Id.* at 494-95. But the petitioner asserts to this Court that the Rhode Island Supreme Court's finding of waiver constituted a "clearly unreasonable interpretation of the facts" presented at trial. (ECF No. 7 at 8.) He avers that contrary to the Rhode Island Supreme Court's holding that he failed to preserve his

objections by relying on a continuing objection that the trial justice granted him, the trial record reflects that it was defense counsel who offered the continuing objection format to the court to accommodate the witnesses and the jury. *Id.* at 9-10. Moreover, he asserts that he in fact "objected to the introduction of all the Rule 404(b) witnesses and their attendant exhibits, and the trial court repeatedly thanked him for graciously allowing it to proceed with a continuing objection." *Id.* at 11.

Despite determining that he had waived his objection to the prior bad acts evidence, the Rhode Island Supreme Court proceeded to consider the petitioner's 404(b) arguments to "make clear that, were the issue properly before the Court, it is without merit." *Doyle*, 235 A.3d at 495. The court held that the trial justice correctly determined "that the testimony elicited from the state's witnesses was independently relevant for a complete and coherent presentation of the events underlying the numerous and complex crimes in this case." *Id.* at 496. The court explained that

> the JCLS grant money was paid to the Institute and the circumstances surrounding the grant were highly relevant. The defendant stands convicted of embezzling a whopping amount of money from the Institute, over several years, and engaging in a monumental scheme to obfuscate inquiry into his charged misconduct. The evidence in this case established that defendant lied to the Auditor General during the audit that was precipitated by the JCLS; he submitted false and forged documents to the auditor and drafted phony correspondence in the name of third parties without their knowledge or consent. This is evidence of defendant's intent and motive to prolong his "far-flung chicanery" and coverup, as well as his consciousness of guilt. It is so interwoven with the charged misconduct as to be independently relevant. The trial justice admitted this evidence at trial because the failure to complete the Leadership Building, which led to the grant audit, resulted in the grand jury investigation and this indictment. The defendant's subterfuge during the audit was highly relevant on the crucial element of defendant's intent and constituted evidence that the incomplete building was not the result of poor bookkeeping or mistake. In fact,

4

defendant's conduct can fairly be ascribed to the entirety of the reasons that underlay Rule 404(b) as proof of defendant's motive, intent, plan, scheme, and opportunity.
*Id.* at 496–97.

Also at trial, the State presented Detective Courtney Elliot of the Rhode Island State Police to provide opinion testimony as a lay witness. *Id.* at 498. Detective Elliot, a member of the Financial Crimes Unit and a certified fraud examiner, joined the state police investigation into the Institute in 2012 and was tasked with determining which of the petitioner's "expenses from various accounts held by the Institute were personal and what expenses were legitimate business expenses chargeable to the Institute." *Id.* Detective Elliot testified that that the petitioner "had incurred $145,332.36 in personal expenditures on his American Express card which was paid by the Institute." *Id.* at 499.

The Rhode Island Supreme Court held that the trial justice did not abuse her discretion under Rhode Island Rule of Evidence 701 by allowing Detective Elliot to offer an opinion about the nature of the petitioner's credit card charges. *Id.* Rule 701 provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions is limited to those opinions which are (A) rationally based on the perception of the witness and (B) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.
> *Id.*

While Detective Elliot's opinions were "informed by her qualifications and experience," it also was "rationally based on the perceptions derived" from her review of thousands of documents and interviews with parties involved in those transactions. *Id.* at 500. These opinions, the court held, "were helpful to a clear understanding of

5

her testimony and the determination of facts at issue." *Id.* Furthermore, the court disagreed with the petitioner that Detective Elliot should have been qualified as an expert witness under Rule 702 because her testimony was not the kind of scientific, technical, or other specialized knowledge contemplated by that Rule. *Id.*

With his conviction affirmed, the petitioner has now come to this Court seeking habeas corpus relief. (ECF No. 1.) He offers two grounds: (1) that the Rhode Island Supreme Court based its decision on the bad character evidence upon an unreasonable application of federal law and an unreasonable determination of the facts in light of the evidence presented at trial; and (2) that the Rhode Island Supreme Court unreasonably interpreted the facts and contravened federal law by upholding the trial justice's allowance of Detective Elliot's testimony. (ECF No. 1-1 at 60, 71.)

## II.    DISCUSSION

### A. Exhaustion of State Remedies

Federal habeas review is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides that habeas relief "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "This exhaustion requirement, which codified preexisting law, is born of the principle 'that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act.'" *Coningford v. Rhode Island*, 640 F.3d 478, 482 (1st Cir. 2011) (quoting *Rose v. Lundy,* 455 U.S. 509, 515, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)).

A failure to present a federal constitutional claim to the state court is generally fatal to a habeas petition. *Id.* at 482. Although "[t]his circuit's rules about what constitutes presenting a federal issue are fairly generous," a habeas petitioner nevertheless "bears a heavy burden to show that he fairly and recognizably presented to the state courts the factual and legal bases of [his] federal claim." *Id.*; *Goodrich v. Hall*, 448 F.3d 45, 47 (1st Cir. 2006); *Barresi v. Maloney*, 296 F.3d 48, 51 (1st Cir. 2002). The First Circuit has set forth examples that would satisfy whether a federal issue was fairly presented, such as "reliance on a specific provision of the Constitution, substantive and conspicuous presentation of a federal constitutional claim, on-point citation to federal constitutional precedents, identification of a particular right specifically guaranteed by the Constitution, and assertion of a state-law claim that is functionally identical to a federal constitutional claim." *Coningford*, 640 F.3d at 482.

A federal constitutional ground must be presented to the state court "face-up and squarely" and be "plainly defined." *Martens v. Shannon*, 836 F.2d 715, 717 (1st Cir. 1988). A "'passing reference' to a constitutional issue will not preserve it for habeas review" and nor will "mere incantation[s] of constitutional buzzwords, unaccompanied by any federal constitutional analysis." *Fortini v. Murphy*, 257 F.3d 39, 44 (1st Cir. 2001); *Adelson v. DiPaola*, 131 F.3d 259, 263 (1st Cir. 1997). The bottom line is whether a petitioner has "tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence

of the federal question." *Jaynes v. Mitchell*, 824 F.3d 187, 192 (1st Cir. 2016) (quoting *Sanchez v. Rodin*, 753 F.3d 279, 294 (1st Cir. 2014)).

Here, in his opening brief and in his reply brief to the Rhode Island Supreme Court, the petitioner devoted lengthy sections of analysis asserting his position that the trial justice's admission of prejudicial character evidence was an erroneous application of Rule 404(b) of the Rhode Island Rules of Evidence. Only in a concluding sentence in both briefs did he state that the bad character evidence exceeded the scope of Rule 404(b) *and* violated his due process rights to a fair trial under both the United States and Rhode Island Constitutions. (ECF No. 6-1 at 50; ECF No. 6-3 at 11.) Indeed, a review of his briefs to the Rhode Island Supreme Court in their totality indicate that his presentment of a federal constitutional issue amounted only to a "passing reference ... unaccompanied by any federal constitutional analysis" following detailed argument on the contours of a state evidentiary rule. *See Fortini*, 257 F.3d at 44. The petitioner therefore does not meet his burden to demonstrate that he presented a federal claim to the Rhode Island Supreme Court "face up and squarely" to put a reasonable jurist on notice of a federal claim. *Jaynes*, 824 F.3d at 192; *Martens*, 836 F.2d at 717.

The petitioner also argues that he cited in his briefs a state case, *State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978), which, as he noted in those filings, cited to a U.S. Supreme Court case, *Spencer v. Texas*, 385 U.S. 554 (1967). (ECF No. 6-1 at 40-41; ECF No. 6-3 at 10.) But *Jalette*, and the parenthetical quote he used from it that drew upon *Spencer,* concerned not a constitutional principle but the general

concern about the prejudicial nature of bad character evidence: "Moreover, another reason for this exclusionary principle is the prejudicial potential of such evidence, the real possibility that the generality of the jury's verdict may mask a finding of guilt which is based upon involvement with unrelated crimes rather than on the evidence which shows the defendant guilty of the crime charged." *Jalette*, 119 R.I. at 524, 382 A.2d at 532 (citing *Spencer*, 385 U.S. at 560). The indirect citation to *Spencer* therefore cannot be said to have reasonably alerted the Rhode Island Supreme Court to a federal point of law beyond its state jurisprudence regarding bad character evidence.

The petitioner offers even less regarding Detective Elliot's testimony, the Rule 701 issue. There, he never mentioned due process or a fair trial to the state court but instead argued that "the trial court abused its discretion and caused Mr. Doyle to suffer prejudice." (ECF No. 6-1 at 53; ECF No. 6-3 at 19.) He contends instead that because R.I. R. Evid. 701 is substantially the same as Fed. R. Evid. 701 he fairly presented a federal claim to the Rhode Island Supreme Court. A similarity in federal and state evidentiary rules is not, however, enough to satisfy the fair presentment requirement. *Coningford*, 640 F.3d at 483. Although the petitioner argued that the Rhode Island Supreme Court's decision contravened the Supreme Court's decisions in *Daubert* and *Kumho Tire Co.* those decisions held that expert opinion must be relevant and reliable to be admissible under Fed. R. Evid. 702 – neither case discussed lay opinion testimony under Fed. R. Evid. 701.

9

The petitioner's failure to exhaust is fatal to his claim and the Court need proceed no further. *Coningford*, 640 F.3d at 483. The AEDPA, however, in the interests of judicial economy, allows the Court to consider the merits and "dispose of that claim once and for all" if the petitioner "does not raise even a colorable federal claim." *Id.* 483-84 (citing 28 U.S.C. § 2254(b)(2); *Granberry v. Greer*, 481 U.S. 129, 135, 107 S. Ct. 1671, 95 L.Ed.2d 119 (1987)).

## B. The Merits

As an initial matter, the respondent argues that the petitioner fails to state a claim for federal habeas corpus relief on his Rule 404(b) claim because it is procedurally defaulted under the Rhode Island Supreme Court's "raise or waive" rule. But the petitioner argues that the Rhode Island Supreme Court erroneously concluded that he failed to preserve his claim for appellate review, which he considers a clearly unreasonably interpretation of the facts in light of the evidence presented at trial. Erroneous or not, the issue is of no moment here because the state Supreme Court proceeded to consider the substance of his 404(b) claims "in order to make clear that, were the issue properly before the Court, it is without merit." *Doyle*, 235 A.3d at 495. And so, this Court will consider the petitioner's claim for habeas corpus relief with a focus on the merits that the Rhode Island Supreme Court did consider.

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). "By its terms § 2254(d) bars relitigation of any claim

'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)." *Id.* at 98. "[A] federal court may grant habeas relief only when a state court's decision on the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by' decisions from [the United States Supreme Court], or was 'based on an unreasonable determination of the facts.'" *Woods v. Donald*, 575 U.S. 312, 315 (2015) (quoting 28 U.S.C. § 2254(d)).

On the Rule 404(b) issue, this matter is analogous to *Coningford*, 640 F.3d at 478, and so this Court must decide it similarly.

The petitioner cannot argue that the state court's decision on the merits was "contrary to … clearly established Federal law" because he has not, as he is required, identified a United States Supreme Court decision identifying legal principles for determining when prior act evidence is constitutionally admissible—and that the Rhode Island Supreme Court could be said to have unreasonably applied it. Indeed, the U.S. Supreme Court "has expressly declined to determine 'whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.'" *Coningford*, 640 F.3d at 484-85 (quoting *Estelle v. McGuire,* 502 U.S. 62, 75 n. 5, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)).

The petitioner does point to two U.S. Supreme Court cases in his search for "clearly established Federal law" but his reliance on them for that proposition is misplaced. First, both cases—*Old Chief v. United States*, 519 U.S. 172 (1997) and *Michelson v. United States*, 335 U.S. 469 (1948)—predate *Coningford* which

11

accurately described the U.S. Supreme Court's lack of a pronouncement on the due process implications of prior bad acts evidence. *See* 640 F.3d at 484-85. In *Old Chief*, the U.S. Supreme Court addressed prior acts evidence but did not do so in constitutional terms. 519 U.S. at 190-92. Neither did *Michelson*, a 1948 decision that predated the 1975 enactment of Rule 404(b), which decided whether, on cross examination, the prosecution could ask the defendant's character witness about the defendant's prior arrest.   335 U.S. 473-87.

In the absence of a U.S. Supreme Court governing rule, the Court is bound to consider the broader fair-trial principle. *Coningford*, 640 F.3d at 485. For an error to rise to constitutional magnitude, it must "so infuse the trial with inflammatory prejudice as to render a fair trial impossible." *Salemme v. Ristaino*, 587 F.2d 81, 86 (1st Cir. 1978).   In the case of an evidentiary ruling, one that results in a fundamentally unfair trial may violate due process. *Petrillo v. O'Neill*, 428 F.3d 41, 44 n.2 (1st Cir. 2005). "But to trigger such relief, the state court's application of state evidentiary law must be 'so arbitrary or capricious as to constitute an independent due process … violation.'" *Coningford*, 640 F.3d at 484 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 111 L.Ed.2d 606 (1990)). The U.S. Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly." *Id.* (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S. Ct. 668, 107 L.Ed.2d 708 (1990)).

The Rhode Island Supreme Court's ruling on the prior bad acts evidence cannot be said to be "so arbitrary or capricious." *See id.* That holding—that the JCLS grant

evidence was relevant to the petitioner's intent and proof of his motive, intent, plan, scheme, and opportunity—was indeed within "the universe of plausible evidentiary rulings." *Id.* at 485.  The same must be said of the court's decision affirming the admission of Detective Elliot's lay opinion testimony, under R.I. R. Evid. 701.  That is, the holding that Detective Elliot's testimony fell within the limits of Rule 701 was a plausible evidentiary ruling.   It was further plausible that she was not required to be qualified as an expert under Rule 702 because expert opinion was not necessary to "prove that drawing two salaries, or paying for a child's college tuition from Institute funds, or making a donation to one's college alma mater amounts to embezzlement." *See Doyle*, 235 A.3d at 500–01.

"The second path to habeas relief runs through a showing that the state court decision 'was based on an unreasonable determination of the facts' on the record before that court." *Porter v. Coyne-Fague*, 35 F.4th 68, 75 (1st Cir. 2022) (quoting 28 U.S.C. § 2254(d)(2)).  This demanding showing cannot be made when "'[r]easonable minds reviewing the record might disagree' about the finding in question." *Id.* (quoting *Brumfield v. Cain*, 576 U.S. 305, 314, 135 S.Ct. 2269, 192 L.Ed.2d 356 (2015).  Indeed, a reviewing court in a habeas corpus action must accord s state court's factual findings a presumption of correctness.  *Gaskins v. Duvall*, 640 F.3d 443, 452 (1st Cir. 2011).

The petitioner has not, with respect to the admission of prior bad acts evidence or the testimony of Detective Elliot, identified any determination of the facts upon

which reasonable minds could not disagree.  For that reason, he cannot be afforded

habeas corpus relief under 28 U.S.C. § 2254(d)(2).

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS the respondent's Motion to

Dismiss (ECF No. 5) and DENIES and DISMISSES Mr. Doyle's Petition for a Writ of

Habeas Corpus (ECF No.1).


IT IS SO ORDERED.

_____

Mary S. McElroy
United States District Judge

November 3, 2022